

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**CHRISTENE E. COSTELLO,**

          Plaintiff

v.     CIVIL NO. 3:12CV635

**EQUIFAX INFORMATION SERVICES, LLC.,**

SERVE:   Corporation Service Company, Registered Agent
              Bank of America Center, 16th Floor
              1111 East Main Street
              Richmond, VA 23219

**EXPERIAN INFORMATION SOLUTIONS, INC.**

SERVE:   David N. Anthony, Registered Agent
              Troutman Sanders, LLP
              1001 Haxall Point
              Richmond, VA 23219

**TRANS UNION, LLC.**

SERVE:   Corporation Service Company, Registered Agent
              Bank of America Center, 16th Floor
              1111 East Main Street
              Richmond, VA 23219

**CAPITAL ONE BANK,**

SERVE:   Corporation Service Company, Registered Agent
              Bank of America Center, 16th Floor
              1111 East Main Street
              Richmond, VA 23219

**ASSET ACCEPTANCE, LLC.**

SERVE:   CT Corporation System, Registered Agent
              4701 Cox Road, Suite 301
              Glen Allen, VA 23060-6802

**PRIMUS AUTOMOTIVE FINANCIAL, INC., t/a**
Mazda American Credit,

SERVE:　　CT Corporation System, Registered Agent
　　　　　　4701 Cox Road, Suite 301
　　　　　　Glen Allen, VA  23060-6802

**SENEX SERVICES CORP.**

SERVE:　　Secretary of the Commonwealth
　　　　　　Service of Process Department
　　　　　　Post Office Box 2452
　　　　　　Richmond, Virginia 23218-2452

and

**REVENUE ASSISTANCE CORP.**

SERVE:　　Secretary of the Commonwealth
　　　　　　Service of Process Department
　　　　　　Post Office Box 2452
　　　　　　Richmond, Virginia 23218-2452

　　　　　　**Defendants.**

## COMPLAINT

COMES NOW the Plaintiff, **CHRISTENE E. COSTELLO**, by counsel, and for her complaint against the Defendants, alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. §1681 et seq. (Federal Fair Credit Reporting Act of "FCRA").

### JURISDICTION

2. The jurisdiction of this Court is conferred by 15 U.S.C. §1681(p) and 28 U.S.C. §1331.

3.　　　　Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1).

2

## PARTIES

4. The Plaintiff, CHRISTENE E. COSTELLO, ("Ms. Costello") is a natural person and a consumer as defined by 15 U.S.C. §1681a(c).

5. Upon information and belief, **EQUIFAX INFORMATION SERVICES, LLC.** ("*Equifax*") is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

5. Upon information and belief, *Equifax* is a "consumer reporting agency", as defined in 15 U.S.C. §1681(f). Upon information and belief, *Equifax* is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties.

6. Upon information and belief, *Equifax* disburses such consumer reports to third parties under contract for monetary compensation.

7. Upon information and belief, **EXPERIAN INFORMATION SOLUTIONS, INC.** ("*Experian*") is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

8. Upon information and belief, *Experian* is a "consumer reporting agency", as defined in 15 U.S.C. §1681(f). Upon information and belief, *Experian* is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties.

9. Upon information and belief, *Experian* disburses such consumer reports to third parties under contract for monetary compensation.

10. Upon information and belief, **TRANS UNION, LLC.** ("*Trans Union*") is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in

Richmond, Virginia.

11. Upon information and belief, *Trans Union* is a "consumer reporting agency", as defined in 15 U.S.C. §1681(f). Upon information and belief, *Trans Union* is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties.

12. Upon information and belief, *Trans Union* disburses such consumer reports to third parties under contract for monetary compensation.

13. Upon information and belief, **CAPITAL ONE BANK,** (*"Capital One"*), is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia as a credit lender and a "furnisher" as governed by the FCRA.

14. Upon information and belief, **ASSET ACCEPTANCE, LLC.** (*"Asset"*) is a limited liability company doing business in the Commonwealth of Virginia. Its primary purpose is the collection of consumer debts.

15. Upon information and belief, **PRIMUS AUTOMOTIVE FINANCIAL, INC. t/a Mazda American Credit,** (*"Mazda"*), is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia as a credit lender and a "furnisher" as governed by the FCRA.

16. Upon information and belief, **SENEX SERVICES CORP.** (*"Senex"*) is a is a foreign corporation with its principal place of business in Indianapolis, Indiana and which regularly conducts business in the Commonwealth of Virginia. Its primary purpose is the collection of consumer debts.

17. Upon information and belief, **REVENUE ASSISTANCE CORP.** (*"Revenue Assistance"*) is a is a foreign corporation with its principal place of business in Beachwood, Ohio

and which regularly conducts business in the Commonwealth of Virginia. Its primary purpose is the collection of consumer debts.

## FACTS

18. In 2010 the Ms. Costello obtained a copy of her consumer credit reports with *Equifax, Experian* and *Trans Union* and learned that each were reporting delinquent accounts with the following entities that did not exist: *Capital One, Asset, Mazda, Senex,* and *Revenue Assistance*.

19. The *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* Reportings were inaccurate.

20. On or about September 3, 2010, Ms. Costello forwarded a written dispute letter to *Equifax, Experian* and *Trans Union* and explained that the *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* accounts were inaccurate.

21. In this letter, Ms. Costello explained that she had never failed to pay *Capital One* all authorized charges on time. Ms. Costello advised that her *Capital One* credit card was stolen in 2004 and used without her authority. Upon learning of the theft Ms. Costello notified *Capital One.* Ms. Costello believes that the alleged delinquency reported by *Capital One* was a result of the authorized charges placed on her account; Ms. Costello further advised that the *Asset* account was a debt collection of the disputed Capital One account that she did not owe; Ms. Costello further advised that the *Mazda* account was as car loan that was solely in her ex-husbands name and that she was not an obligor on the car loan; Ms. Costello advised that the medial collection of St. Luke Hospital was paid in full twice and that the medical collection of Geneva General Hospital was not her debt.

22. On or about October 20, 2010, *Equifax* sent correspondence to Ms. Costello detailing the results of its investigation. In this letter *Equifax* stated that its investigation "verified" that the

*Capital One, Senex, Revenue Assistance, Asset* and *Mazda* (listed by Equifax as *Ford Fin* in its Investigation Results) accounts were reporting accurately, however each of the accounts were noted as disputed by the consumer.

23. On or about October 20, 2010, *Experian* sent correspondence to Ms. Costello detailing the results of its investigation. In this letter *Experian* stated that the disputed accounts with *Asset, Capital One, Mazda, Revenue Group (original creditor Geneva General Hospital)* and *Senex (original creditor St. Luke's Hospital)*, had each been "verified" by the creditors and each account would remain on her credit report.

24. Ms. Costello never received a response from *Trans Union* to her September 2010 dispute letter.

25. On or about January 3, 2011 Ms. Costello forwarded a second written dispute letter to *Experian, Equifax* and *Trans Union* to again dispute the reporting of the following inaccurate accounts of *Capital One, Asset, Mazda, Senex (St. Luke's Hospital)* and *Revenue Assistance (Geneva General Hospital)*.

26. On or about January 31, 2011 *Experian* sent correspondence to Ms. Costello that advised that it was responding to her request to verify items on her personal credit report. However, it had already investigated this information and the credit grantors had verified its accuracy. *Experian* further advised Ms. Costello that unless she could send relevant information to support her claim, *Experian* would not reinvestigate the *Mazda, Asset, Capital One* and *Senex* accounts again.

27. On or about February 1, 2011 *Trans Union* sent correspondence to Ms. Costello detailing the results of its investigation. In this letter *Trans Union* stated that the *Asset, Capital One* and *Mazda* accounts had been "verified" by the creditors as reporting accurately.

28. On or about March 1, 2011 *Equifax* sent correspondence to Ms. Costello detailing the

results of its investigation. In this letter *Equifax* stated that the *Asset, Senex* and *Capital One* accounts had been deleted from her credit report. However, upon further review Ms. Costello noticed that the *Senex* and *Capital One* accounts were in fact, still reporting on her credit report as derogatory. In addition the disputed *Mazda* account was also listed on her credit report. All three of these accounts included notations that the consumer disputes and that a reinvestigation was in progress. However, Ms. Costello never received any further reinvestigation results from *Equifax*.

29. Defendants had actual knowledge of these inaccuracies and deliberately chose to ignore and permit the reporting of the inaccurate accounts.

30. Upon information and belief, *Equifax, Experian and Trans Union* prepared and published to third parties multiple inaccurate consumer reports about Ms. Costello that contained the inaccurate derogatory *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* accounts.

### COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681e(b)
### (EQUIFAX, EXPERIAN and TRANS UNION)

31. Ms. Costello realleges and incorporates all other factual allegations set forth in the Complaint.

32. *Equifax, Experian* and *Trans Union* each violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Ms. Costello's credit reports and credit files it published and maintained.

33. As a result *Equifax, Experian* and *Trans Union's* violations of 16 U.S.C. §1681e(b), Ms. Costello suffered actual damages including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental, physical and emotional distress.

34. The violations by *Equifax, Experian* and *Trans Union* were willful rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court

7

pursuant to 15 U.S.C. §1681n. In the alternative, *Equifax, Experian* and *Trans Union* were negligent, which entitles Ms. Costello to recovery under 15 U.S.C. §1681o.

35. Ms. Costello is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax, Experian* and *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681i(a)(1)
### (EQUIFAX, EXPERIAN and TRANS UNION)

36. Ms. Costello realleges and incorporates all other factual allegations set forth in the Complaint.

37. *Equifax, Experian* and *Trans Union* each violated 15 U.S.C. §1681i(a)(1) on multiple occasions by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Ms. Costello's credit file.

38. As a result of *Equifax, Experian* and *Trans Union's* violations of 15 U.S.C. §1681i(a)(1), Ms. Costello suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

39. The violations by *Equifax, Experian* and *Trans Union* were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, *Equifax, Experian* and *Trans Union* were negligent which entitles Ms. Costello to recovery under 15 U.S.C. §1681o.

40. Ms. Costello is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax, Experian* and *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT THREE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681i(a)(2)(A)
### (EQUIFAX, EXPERIAN and TRANS UNION)

41. Ms. Costello realleges and incorporates all other factual allegations set forth in the Complaint.

42. *Equifax, Experian* and *Trans Union* each violated 15 U.S.C. §1681i(a)(2)(A) on multiple occasions by failing to provide *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* with all the relevant information regarding Ms. Costello's disputes.

43. As a result of *Equifax, Experian* and *Trans Union's* violations of 15 U.S.C. §1681i(a)(2), Ms. Costello suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental, physical and emotional distress.

44. The violations by *Equifax, Experian* and *Trans Union's* were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, *Equifax, Experian* and *Trans Union* were negligent which entitles Ms. Costello to recovery under 15 U.S.C. §1681o.

45. Ms. Costello is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax, Experian* and *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT FOUR: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681i(a)(4)
### (EQUIFAX, EXPERIAN and TRANS UNION)

46. Ms. Costello realleges and incorporates all other factual allegations set forth in the Complaint.

47. *Equifax, Experian* and *Trans Union* each violated 15 U.S.C. §1681i(a)(4) on multiple occasions by failing to review and consider <u>all</u> relevant information submitted by Ms.

Costello.

48. As a result of *Equifax, Experian* and *Trans Union's* violations of 15 U.S.C. §1681i(a)(4), Ms. Costello suffered actual damages including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

49. The violations by *Equifax, Experian* and *Trans Union* were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, *Equifax, Experian* and *Trans Union* were negligent entitling Ms. Costello to recovery under 15 U.S.C. §1681o.

50. Ms. Costello is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax, Experian* and *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT FIVE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681i(a)(5)(A)
### (EQUIFAX, EXPERIAN and TRANS UNION)

51. Ms. Costello realleges and incorporates all other factual allegations set forth in the Complaint.

52. *Equifax, Experian* and *Trans Union* each violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate item of information from Ms. Costello's credit file or modify the item of information upon a lawful reinvestigation.

53. As a result of *Equifax, Experian* and *Trans Union's* violations of 15 U.S.C. §1681i)a)(5)(A), Ms. Costello suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

54. The violations of *Equifax, Experian* and *Trans Union* were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court

pursuant to 15 U.S.C. §1681n. In the alternative, *Equifax, Experian* and *Trans Union* were negligent entitling Ms. Costello to recover under 15 U.S.C. §1681o.

55. Ms. Costello is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Equifax, Experian* and *Trans Union* in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT SIX: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681s-2(b)(1)(A)
### (*Capital One, Asset, Mazda, Senex and Revenue Assistance*)

56. Ms. Costello realleges and incorporates all other factual allegations set forth in the Complaint.

57. On one or more occasions within the two years prior to the filing of this suit, by example only and without limitation, *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* each violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate Ms. Costello's disputes.

58. When Plaintiff mailed her disputes to the consumer reporting agencies, they use a dispute system named "e-Oscar", which has been adopted by the credit reporting agencies and their furnisher customers such as *Capital One, Asset, Mazda, Senex* and *Revenue Assistance*. It is an automated system and the procedures used by the CRA's are systemic and uniform.

59. When *Equifax, Experian* and *Trans Union* receives a consumer dispute, it (usually via an Indian outsource vendor), translates that dispute into an "ACDV" form.

60. The ACDV form is the method by which *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* has elected to receive consumer disputes pursuant to 15 U.S.C. §1681i(1).

61. It is extremely rare – certainly less than 1% of the time – that *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* will receive a consumer's dispute sent through the CRA's

other than through the e-Oscar system.

62. On information and belief, the Plaintiff alleges that to date *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* have never complained to the CRAs about the amount of information they receive regarding a consumer dispute through the e-Oscar system or through ACDVs.

63. When *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* receives a consumer dispute ACDV form, they are aware that they may also contact the CRA that sent it to obtain more information regarding a consumer's dispute.

64. Based on the manner in which *Equifax, Experian* and *Trans Union* responded to the Plaintiff's disputes, representing that *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* had "verified" the supposed accuracy of its reporting, Plaintiff alleges that *Equifax, Experian* and *Trans Union* did in fact forward the Plaintiff's dispute via an ACDV to *Capital One, Asset, Mazda, Senex* and *Revenue Assistance*.

65. *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* understood the nature of the Plaintiff's dispute when they received the ACDV from *Equifax, Experian* and *Trans Union*.

66. When *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* received the ACDV from *Equifax, Experian* and *Trans Union*, each as well could have reviewed its own system and previous communications with the Plaintiff and discovered additional substance of the Plaintiff's dispute.

67. Notwithstanding the above, *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* followed a standard and systemically unlawful process when they received the ACDV dispute. Basically, all *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* does is review their own internal computer screen for the account and repeat back to the ACDV system the same

information *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* already had reported to the CRAs.

68. When *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* each receives a consumer dispute through e-Oscar, they does not conduct a substantive review of any sort to determine whether or not the information already in their computer system is itself accurate.

69. As a result of *Capital One, Asset, Mazda, Senex* and *Revenue Assistance's* violations of 15 U.S.C. §1681s-2(b)(1)(A), Ms. Costello suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

70. The violations by *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

71. The law in this District, the Fourth Circuit and even nationally has long ago been set to require a detailed and searching investigation by a creditor when it receives a consumer's FCRA dispute through a CRA.

72. *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* were aware of the *Johnson v. MBNA* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding the Plaintiff's dispute.

73. *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* has been sued numerous times for its alleged failures to conduct lawful FCRA investigations.

74. On information and belief, the Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* intended their employees or agents to follow.

75. On information and belief, the Plaintiff alleges that *Capital One, Asset, Mazda, Senex* and *Revenue Assistance*'s employees or agents did not make a mistake (in the way in which he or she followed *Capital One, Asset, Mazda, Senex* and *Revenue Assistance*'s procedures) when he or she received, processed and responded to the *Equifax, Experian* and *Trans Union* ACDVs.

76. On information and belief, the Plaintiff alleges that *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* has not materially changed its FCRA investigation procedures after learning of their failures in this case.

77. In the alternative, *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* were negligent, which entitles Ms. Costello to recovery under 15 U.S.C. §1681o.

78. Ms. Costello is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT SEVEN: VIOLATION OF FAIR CREDIT REPORTING ACT**
**15 U.S.C. §1681s-2(b)(1)(B)**
**(*Capital One, Asset, Mazda, Senex* and *Revenue Assistance*.)**

79. Ms. Costello realleges and incorporates all other factual allegations set forth in the Complaint (Particularly though not limited to as pled in the "Fact" section of the Complaint and the previous Count).

80. On one or more occasions within the past two years, by example only and without limitation, *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* each violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

81. As Plaintiff detailed in Count Six, *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* has elected to use the e-Oscar system for its FCRA disputes received through the CRAs.

82. *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* are aware of the meaning of the several dispute codes used by the CRAs in e-Oscar

83. *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the CRAs.

84 As a result of *Capital One, Asset, Mazda, Senex* and *Revenue Assistance's* violations of 15 U.S.C. §1681s-2(b)(1)(B), Ms. Costello suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

85. The violations by *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* were negligent, which entitles Ms. Costello to recovery under 15 U.S.C. §1681o.

86. Ms. Costello is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

**COUNT EIGHT: VIOLATION OF FAIR CREDIT REPORTING ACT**
**15 U.S.C. §1681s-2(b) (1)(C) and (D)**
**(*Capital One, Asset, Mazda, Senex* and *Revenue Assistance*.)**

87. Ms. Costello realleges and incorporates all other factual allegations set forth in the Complaint. (Particularly though not limited to as pled in the "Fact" section of the Complaint and the previous two Counts).

88. On one or more occasions within the past two years, by example only and without limitation, *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* violated 15 U.S.C. § 1681s-

2(b)(1)(C) and (D) by publishing the *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* representations within Ms. Costello's credit files with the CRAs without also including a notation that this debt was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

89. Specifically, *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* failed to add the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to *Equifax, Experian* and *Trans Union*.

90. On information and belief, the Plaintiff alleges that *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* rarely if ever adds the XB code or other notation that an account is disputed when it responds to e-Oscar ACDVs.

91. The Plaintiff's dispute was, at a minimum, bone fide.

92. As a result of *Capital One, Asset, Mazda, Senex* and *Revenue Assistance's* violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), Ms. Costello suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

93. The violations by *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* were willful, rendering each Defendant individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

94. *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* were aware of the Saunders v. B.B. and T FCRA decision by the Fourth Circuit when they followed the ACDV procedures used regarding the Plaintiff's dispute.

95. *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* have been sued multiple times for its alleged failures to note their accounts as disputed when responding to a FCRA disputes.

96. On information and belief, the Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* intended their employees or agents to follow.

97. On information and belief, the Plaintiff alleges that *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* 's employees or agents did not make a mistake (in the way in which he or she followed *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* 's procedures) when he or she received, processed and responded to the *Equifax, Experian* and *Trans Union's* ACDVs and did not include the XB code in the CCC field.

98. On information and belief, the Plaintiff alleges that *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* have not materially changed their FCRA investigation procedures regarding the CCC field in ACDVs after learning of their failures in this case.

99. In the alternative, *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* were negligent, which entitles Ms. Costello to recovery under 15 U.S.C. §1681o.

100. Ms. Costello is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Capital One, Asset, Mazda, Senex* and *Revenue Assistance* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendants, jointly and severally; for their attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate, and such other relief the Court deems just and proper.
**TRIAL BY JURY IS DEMANDED**

**CHRISTENE E. COSTELLO,**

By _____
~~Of Counsel~~

THOMAS R. BREEDEN
THOMAS R. BREEDEN, P.C.
10326 Lomond Drive
Manassas, VA 20109
(703) 361-9277 – Telephone
(703) 257-2259 – Facsimile
E-mail: trb@tbreedenlaw.com

LEONARD A. BENNETT, VSB #37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
E-mail: lenbennett@clalegal.com

SUSAN M. ROTKIS, VSB #40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
E-mail: srotkis@clalegal.com

*Counsel for Plaintiff*